UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANNELENA BALATBAT-LIGHT,

        **Plaintiff,**

v.                                                    Case No:   6:16-cv-549-Orl-GJK

COMMISSIONER OF SOCIAL
SECURITY,

        **Defendant.**

## MEMORANDUM OF DECISION

Annelena Balatbat-Light, on behalf of a minor, L.H.L. (the "Claimant"), appeals to the District Court a final decision of the Commissioner of Social Security (the "Commissioner") finding that Claimant's disability ceased as of April 30, 2012. Doc. No. 1. Claimant argues that the ALJ committed reversible error by: 1) failing to fully and fairly develop the record; 2) relying on the testimony of a child who was not qualified to testify under Florida state law; and 3) failing to consider probative evidence regarding Claimant's lack of medical improvement. Doc. No. 21 at 12-14, 17-19, 22-23. Claimant requests that the Commissioner's decision be reversed and remanded for further proceedings. *Id.* at 32. For the reasons set forth below, the Commissioner's final decision is **AFFIRMED**.

I.      BACKGROUND

On July 9, 2010, the Commissioner determined that Claimant was disabled as of that date (the "Initial Determination"). R. 24. On April 25, 2012, on periodic review, the Commissioner determined that Claimant was no longer disabled as of April 30, 2012. R. 24, 95. On August 10, 2012, Claimant filed a request for reconsideration. R. 104. On March 29, 2013, the Commissioner

upheld the decision upon reconsideration after a hearing by a state agency disability hearing officer. R. 24, 136. On May 7, 2013, Claimant filed a request for hearing before the ALJ. R. 141. On November 1, 2013, Claimant attended a video hearing before the ALJ. 43-94. On June 24, 2014, the ALJ issued an unfavorable decision. R. 24-36. On August 19, 2014, Claimant filed a request for review of the ALJ's decision. R. 18-19. On February 17, 2016, the Appeals Council denied Claimant's request for review. R. 1-7. On March 31, 2016, Claimant filed this appeal. Doc. No. 1.

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (the court also must consider

evidence detracting from evidence on which Commissioner relied). The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## III. EVALUATION OF A MINOR'S DISABILITY

### A. The Three-Step Disability Determination

For a child under the age of eighteen to be entitled to Supplemental Security Income ("SSI"), that child must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Fontanez ex rel. Fontanez v. Barnhart*, 195 F.Supp.2d 1333, 1345 (M.D. Fla. 2002) (citing 42 U.S.C. § 1382c(a)(3)(C)(i)). In making such a determination, the Commissioner uses a three-step analysis. *Espinoza ex. rel. J.E. v. Astrue*, No. 8:07–cv–2003–T–HTS, 2009 WL 331600, at *1 (M.D. Fla. Feb. 10, 2009). A "child is considered disabled if he or she: 1) is not engaged in substantial gainful activity; 2) has a medically determinable impairment that is severe; and 3) the impairment meets, medically equals, or functionally equals a [listed impairment]." *Id.* When considering whether an impairment functionally meets a listed impairment, the Commissioner considers six domains of a child's functioning: 1) acquiring and using information; 2) attending to and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for oneself; and 6) health and physical well-being. *Id.* (citing 20 C.F.R. § 416.926a (b)(1)). An impairment functionally equals a listed impairment if the child has "'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* (citing 20 CFR § 416.926a(a)).

**B. The Three-Step Medical Improvement Review Standard**

After a child is found to be eligible for SSI, the Commissioner performs a periodic review of the case to determine whether the child is still eligible to receive SSI due to any medical improvements. *Verdecia v. Colvin*, CASE NO. 12-21057-CIV-MARTINEZ/SIMONTON, 2015 WL 12556299, at * 2 (S.D. Fla. Mar. 31, 2015). When making such a determination, the Commissioner implements a three-step Medical Improvement Review Standard Sequential Evaluation Process. *Id.* (citing 20 C.F.R. § 416.994a(b)). "At step one, the [Commissioner] first considers whether there has been a medical improvement in the claimant's condition." *Id.* At step one, the Commissioner "examines if medical improvement has occurred in the impairment(s) that the claimant had at the time of the most recent medical determination that he [or she] was disabled, which is known as the 'comparison point decision' ('CPD')."[1] *Id.* at * 3. If there are no improvements in a claimant's CPD impairments, then the claimant is considered disabled unless an exception found in 20 C.F.R. § 1994(e)-(f) applies. *Id.*

At step two, the Commissioner considers whether the impairments the child had at CPD still meet (or medically or functionally equal) the severity of any of the listed impairments. *Id.* When the Commissioner finds that a claimant's impairments did not meet or medically equal the listed impairments at CPD (but functionally equaled the listed impairments at CPD), the Commissioner must consider whether the claimant's CPD impairments now functionally equal the listed impairments. *Id.* "If there is a functional equivalence, the child is disabled; if it does not, the Commissioner moves to step three." *Id.*

---

[1] A "medical improvement" is any decrease in the medical severity of the impairments present at CPD. *Verdecia*, 2015 WL 12556299 at * 2. The decrease in severity may be of any quantity or degree, but minor changes in symptoms, signs or laboratory findings are disregarded. *Id.* (citing 20 C.F.R. 416.994a(c)).

At step three, the Commissioner "decides if the child is currently disabled…by considering all the impairments the claimant has now, including any not present or not considered at the CPD." *Id.* When making a determination at step three, the [Commissioner] must make three separate findings. *Id.* "First, the [Commissioner] must determine whether the child has a severe impairment or combination of impairments." [2] *Id.* Second, if the child has a severe impairment or a combination of impairments, the Commissioner then determines if such impairments meet or medically equal the severity of any of the listed impairments. *Id.* Third, "if the child's impairments do not meet or medically equal a [listed impairment], the [Commissioner] must determine if the claimant's impairments functionally equal the [listed impairments]."[3] *Id.*

## IV. THE ALJ'S DECISION

### A. Step One

At step one, the ALJ determined that there has been medical improvement in the impairments Clamant had at CPD. R. 28. In making this determination, the ALJ made three central findings. First, the ALJ found the Initial Determination to be the CPD. R. 27. Second, the ALJ found that at CPD, Claimant had the following severe impairments: ADHD, speech and language delay, and affective disorder. *Id.* Third, the ALJ found that at CPD, Claimant's impairments functionally equaled the listed impairments. *Id.* In making such a finding, the ALJ found marked limitations in interacting and relating with others and marked limitations in caring for herself. R. 28. Finally, the ALJ determined that there has been medical improvement in Claimant's CPD impairments since April 30, 2012:

---

[2] "An impairment or combination thereof is not severe if it is a slight abnormality or combination of slight abnormalities resulting in, at most, minimal functional limitations." *Id.* (citing 20 C.F.R. § 416.924(c)).
[3] In making this determination, the ALJ considers the same six domains that are considered in the initial three-step disability determination. *Id. See also supra*, pg. 3.

> Since [April 30, 2012], the objective evidence of record shows medical improvement, particularly when [Claimant] is compliant on medications as discussed in detail below.

*Id.* Thus, the ALJ found that the objective record evidence (which the ALJ discusses at step three) shows medical improvement of Claimant's impairments, particularly when Claimant is compliant with medication. *Id. See also* R. 29-34 (the ALJ's summary of the medical evidence).[4]

## B. Step Three

After finding that Claimant's CPD impairments have improved since April 30, 2012, the ALJ proceeded to step three.[5] At step three, the ALJ found that as of April 30, 2012, Claimant has the following severe impairments: ADHD; Autism Spectrum Disorder; speech and language delay (borderline to below average); Intermittent Explosive Disorder; Oppositional Defiant Disorder; and Mood Disorder. R. 28. The ALJ also found that such impairments (or combination thereof) do not meet or medically equal any of the listed impairments. R. 29. In the final part of step three, the ALJ found that none of Claimant's current impairments (or combination thereof) functionally equals any of the listed impairments. R. 29-35. The ALJ found that Claimant had less than marked limitations in five of the six domains of a child's functioning. R. 34-35. *See also supra* n. 2, 3. The ALJ found no medical evidence of any significant limitation in the sixth domain, health and

---

[4] At step three, the ALJ provided a thorough summary of the medical record, and identified evidence showing Claimant's medical improvement, including: 1) Claimant's improvement of her symptoms with medication; 2) Claimant's improved grades in school; 3) treatment records noting that Claimant was "stable and doing very well"; 4) fewer instances of Claimant's anxiety; and 5) treatment records showing that she was less defiant and oppositional. R. 29-34.

[5] It appears that the ALJ omitted step two and failed to determine whether the impairments Claimant had at CPD still meet (or medically or functionally equal) the severity of any of the listed impairments. *Verdecia*, 2015 WL 12556299, at *3. Nevertheless, Claimant never noted this omission in the Joint Memorandum. Doc. No. 21 at 12-14, 17-19, 22-23. Thus, the undersigned finds Claimant to have waived any argument regarding the ALJ's omission of step two of the Medical Improvement Review Standard. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (citing *In re Pan American World Airways, Inc.*, 905 F.2d 1457, 1461–62 (11th Cir.1990)) (declining to consider arguments not raised on appeal to the district court).

physical well-being. R. 35. In making such a determination, the ALJ relied on testimony from the Claimant, Claimant's grandmother, and Ms. Balatbat-Light. R. 30, 34-35.

Based on his findings, the ALJ found that:

> Beginning on April 30, 2012, [Claimant] has not had an impairment or combination of impairments resulting in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning.

R. 35. Thus, the ALJ found that since April 30, 2012, Claimant has not had a severe impairment (or combination thereof) that resulted in either: 1) marked limitation in two domains; or 2) extreme limitations in a single domain. Based on Claimant's failure to meet step three, the ALJ found Claimant's disability to have ended on April 30, 2012. *Id.*

## V. ANALYSIS

### A. Duty to Develop the Record

Claimant argues that the ALJ failed to develop the record by not obtaining: 1) treatment notes from a licensed mental health counselor; 2) forms from Claimant's first and second grade teachers; and 3) records of Claimant's hospitalization on January 10, 2013. Doc. No. 21 at 12-14. The Commissioner makes two general arguments in response: 1) Claimant has not shown how she is prejudiced by the ALJ's failure to obtain such evidence; and 2) it is Claimant's burden to provide such evidence. *Id.* at 14-17.

The Eleventh Circuit has held that the ALJ has a basic duty to develop a fair and full record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). It remains the claimant's burden prove that she is disabled, and she is responsible for producing evidence in support of her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a),(c)). The record need not be further developed if the ALJ has sufficient evidence to decide the case. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding that where the record is complete and

adequate to make a decision, no showing of prejudice is made). Finally, case law in this district requires the Plaintiff to show some prejudice before remand to the Commissioner for further development is ordered. *See Edmunson ex rel. J.D. v. Astrue,* No. 8:10–cv–675–T–26TBM, 2011 WL 3875416, at *7 (M.D. Fla. Aug. 10 2011) (citing *Graham*, 129 F.3d at 1423). "In considering whether a remand is required, the court should be guided by whether there are evidentiary gaps in the record that result in unfairness or clear prejudice." *Id*.

### 1) Ms. Grell's Treatment Notes

On October 30, 2013, Ann Grell, a licensed mental health counselor, sent correspondence to the Commissioner noting the Claimant has "entered into counseling for help with her emotional and behavioral issues." R. 634. The following is taken from Ms. Grell's correspondence. Claimant has been out of control for serious lengths of time and has been hospitalized twice in the last year. *Id.* When disturbed, Claimant frequently talks about killing herself. *Id.* Claimant has not matured enough to attend to her personal hygiene needs. *Id.* Claimant has not acquired a sense of personal safety and has to be continually monitored to maintain boundaries and safe activities. *Id.*

The ALJ gave Ms. Grell's opinion little weight:

> In this instance, little weight is given to Ms. Grell's opinion. First, her opinion is not supported by any of her own treatment notes, but appears to be based on reported subjective symptoms. Furthermore, her opinion is not supported by the treating source records…which show fairly benign objective mental status findings and good response with psychotropic medications. It is also inconsistent with [Claimant's] teacher['s] evaluation…indicating no more than…obvious problem[s] and multiple none to slight problems, and [Claimant's] satisfactory grades.

R. 32 (emphasis added).[6] Thus, the ALJ gave Ms. Grell's opinion little weight because: 1) it was not supported by any treatment notes; 2) the opinion appears to be based on reported subjective

---

[6] The parties agree that the record does not does not contain treatment notes from Ms. Grell. Doc. No. 21 at 10.

symptoms; 3) the opinion is not supported by the treating source records; and 4) the opinion is inconsistent with Claimant's teacher's evaluation. *Id.*

Claimant argues that the ALJ should have obtained Ms. Grell's treatment notes. Doc. No. 21 at 12-13. The undersigned finds Claimant's argument unavailing because Claimant has not shown the "evidentiary gaps" necessary to warrant remand. *Edmunson*, 2011 WL 3875416, at *7. Clamant has not shown how she was prejudiced by the ALJ's failure to obtain Ms. Grell's treatment notes. Doc. No. 21 at 12-13. Furthermore, Claimant's argument overlooks the ALJ's other reasons for giving Ms. Grell's opinion little weight, namely: 1) the opinion appears to be based on reported subjective symptoms; 2) the opinion is not supported by the treating source records; and 3) the opinion is inconsistent with Claimant's teacher's evaluation. R. 32. Claimant has not made any showing how Ms. Grell's treatment notes may impact these other findings. Doc. No. 21 at 12-13. Accordingly, the undersigned finds no error in the ALJ's failure to obtain Ms. Grell's treatment notes.

### 2) First and Second Grade Teacher Evaluations

On February 1, 2012, JoAnn Rathbun, Claimant's teacher, completed a teacher's evaluation regarding Claimant's functional abilities. R. 332-339. Ms. Rathbun was Claimant's kindergarten teacher for about one and one-half years. R. 339; Doc. No. 21 at 13. The ALJ gave Ms. Rathbun's evaluation great weight, finding it "is consistent with the treating source records and the school records showing progress in school…" R. 32.

Claimant argues that the ALJ should have attempted to obtain teacher evaluations from Claimant's first and second grade teachers:

> There were no reports from either Claimant's first grade teacher or her second grade teacher in the record. There was a [teacher evaluation] from Claimant's Kindergarten teacher…By the time the teacher filed the [teacher evaluation], Claimant had been with her

> <u>for a full twelve months…long enough to grow accustomed to her structure and methods.</u> It is possible Claimant was doing well in Kindergarten the second time she took it because she was comfortable with the teacher and the subject matter. <u>It appears from the medical records that Claimant did have issues when transitioning from Kindergarten to First Grade and from First Grade to Second Grade…</u>

Doc. No. 21 at 13-14 (emphasis added). Thus, Claimant states that the ALJ should have obtained teacher evaluations from Claimant's first and second grade teachers because: 1) Ms. Rathbun's evaluation is insufficient; and 2) it appears from the medical records that Claimant had issues transitioning from kindergarten to first grade and first to second grade. *Id.*

The undersigned finds that there are no evidentiary gaps warranting remand for two reasons. First, Claimant does not cite any specific evidence to support the allegation that she had issues transitioning from kindergarten to first grade and first to second grade. Doc. No. 21 at 14. Second, as noted by the Commissioner, the record contains Claimant's Individualized Education Plan ("IEP") for her second grade year and Claimant's report cards for first and second grade.[7] R. 381-391 (IEP), 392-394 (report cards). The IEP contains information regarding Claimant's learning and functional abilities. *See* R. 385 (detailing Claimant's abilities in math, social skills, independent functioning, communication, and health care). Thus, the undersigned finds that the record contains sufficient evidence from Claimant's first and second grade school years for the ALJ to make her determination. *See Graham*, 129 F.3d at 1423.

---

[7] An Individualized Education Plan "is an education plan tailored to a child's unique needs that is designed by the school district in consultation with the child's parents after the child is identified as eligible for special-education services." *Forest Grove School Dist. v. T.A.*, 557 U.S. 230, 234 n. 1, 129 S.Ct. 2484, 2489, 174 L.Ed.2d 168 (2009) (citing 20 U.S.C. §§ 1412(a)(4), 1414(d)). Under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*, "all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). In order to ensure that children with disabilities are receiving a free appropriate public education, school districts must create an IEP for each child with disabilities. *See K.I. ex rel. Jennie I. v. Montgomery Public Schools,* 805 F.Supp.2d 1283, 1290 (M.D.Ala.2011) (citing 20 U.S.C. § 1414(d)).

### 3) Claimant's Hospitalization Records

Claimant's final duty to develop argument centers on records of Claimant's hospitalization. On March 5, 2013, Claimant requested medical records from her physician, Dr. Fariya Afridi. R. 613. Dr. Afridi later sent correspondence stating that he denied the release of a portion of Claimant's record (the "Denial Letter"). R. 613. Such records included information regarding Claimant's hospitalization on January 10, 2013, approximately eight and one-half months after Claimant's date of medical improvement. Doc. No. 21 at 14; *supra* pgs. 5-6. Claimant argues that the ALJ failed to obtain records of Claimant's hospitalization at Halifax Behavioral Healthcare ("HBH"):

> [Dr. Afridi] refused to release records of Claimant's hospitalization on January 10, 2013… [the Commissioner] was made aware of this, but it does not appear that an attempt was made by [the Commissioner] to obtain these records.

*Id*. Thus, Claimant argues that the ALJ erred because it appears that she made no attempt to collect records regarding Claimant's January 10, 2013 hospitalization. *Id.* The Commissioner argues that the ALJ already requested (and received) documents from HBH. *Id.* at 14.

The undersigned finds no reversible error because it appears that records from Claimant's hospitalization are already in the record. R. 646-655. The record already contains a form from HBH (the "HBH Form") stating that Claimant was admitted to HBH on January 7, 2013 and discharged on January 10, 2013.[8] R. 646. Based on the foregoing, the undersigned finds that the ALJ sufficiently developed the record with regard to the January 10, 2013 hospitalization.

---

[8] The discharge date on the HBH Form matches a shorthand notation on the Denial Letter: "1/10/13 DC." R. 613. The Court interprets such shorthand as noting Claimant's discharge date.

**B. Reliance on Claimant's Testimony**

Throughout the opinion, the ALJ relied on Claimant's testimony. R. 30, 34-35. Claimant argues that she was not qualified to testify under Fla. Stat. §90.605 because: 1) she was not asked about the difference between the truth and a lie; and 2) she was not asked to declare that she would testify truthfully.[9] Doc. No. 21 at 17. The Commissioner makes two general arguments in response: 1) Fla. Stat. §90.605 does not apply to social security administrative proceedings; and 2) agency policy states that it is the ALJ who determines the subject and scope of testimony from a claimant and any witnesses, including how and when the person testifies at the hearing. Doc. No. 21 at 19-20.

The undersigned agrees with the Commissioner. Plaintiff cites to no authority standing for the proposition that the Florida Evidence Code applies to the Commissioner's administrative proceedings. Doc. No. 21 at 17-19. Furthermore, the Commissioner's HALLEX procedures state:

> While other circumstances may exist in which an ALJ finds an "important reason" not to take an oath or affirmation, <u>the ALJ will not administer an oath or affirmation to a child</u> or an incompetent individual <u>that the ALJ believes will not understand the significance of the oath or affirmation. When an "important reason" for not taking an oath or affirmation is present, the ALJ will, on the record, impress upon the witness the importance of truthful answers. The ALJ will also clearly state on the record that the witness did not take an oath or affirmation, and explain why he or she did not administer an oath or affirmation.</u>

---

[9] Fla. Stat. §90.605 provides:

> (1) Before testifying, each witness shall declare that he or she will testify truthfully, by taking an oath or affirmation in substantially the following form: "Do you swear or affirm that the evidence you are about to give will be the truth, the whole truth, and nothing but the truth?" The witness's answer shall be noted in the record.
>
> (2) In the court's discretion, a child may testify without taking the oath if the court determines the child understands the duty to tell the truth or the duty not to lie.

*Id.*

HALLEX I-2-6-54 (S.S.A.), 1993 WL 643034 (Last updated: Oct. 14, 2016) (emphasis added). Thus, the ALJ does not have to give an oath to a child provided that: 1) the ALJ believes that the child will not understand the significance of the oath or affirmation; 2) the ALJ, on the record, impresses the upon the witness the importance of truthful answers; and 3) the ALJ clearly states on the record that the witness did not take an oath and explain the reasons why the oath was not given.[10] *Id.* As noted by the Commissioner, Claimant was seven years old at the time of the administrative hearing. Doc. No. 21 at 21. Furthermore, the ALJ took steps to impress upon the witness the importance of telling the truth:

> ALJ: All right. Thank you. All right. [Claimant], I'm just going to ask you some questions. And all I ask that you do is just…answer, I should say, to the best of your knowledge[.] Okay.
>
> CLMT: Okay…
>
> ALJ: Okay[.] And, obviously, if you don't know the answer to a question, just let me know that. That's perfectly fine. And if you do know the answer to a question, then you can go ahead and give me that answer to the question[.] Okay[?]
>
> CLMT: Okay.

R. 73. The ALJ did not state on the record that Claimant did not take the oath and the reasons why the oath was not given to Claimant. R. 73-81. However, the undersigned finds the ALJ's error harmless because the correct application of the HALLEX procedures would not have changed the ALJ's findings. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). Accordingly, the undersigned finds no error in the ALJ's handling of Claimant's testimony at the hearing and the ALJ's use of such testimony in her decision.

---

[10] This district has held that "although HALLEX interpretations do not carry the force of law, an ALJ's failure to follow HALLEX procedures may justify reversal if it results in prejudice to a claimant." *Roark v. Comm'r of Soc. Sec.*, No. 6:14–cv–84–Orl–37TBS, 2015 WL 1288140, *5 (M.D. Fla. Mar. 20, 2015).

**C. Failure to Weigh Medical Evidence**

On January 18, 2012, the Commissioner completed a Continuing Disability Review Analysis Form (the "CDR Form"). R. 542-43. The CDR Form was completed approximately three and one-half months before Claimant's date of medical improvement. *See supra* pgs. 5-6. In the CDR Form, the Commissioner compares Claimant's symptoms and lab findings at CPD to Claimant's current symptoms and lab findings. R. 542. The CDR Form states that as of January 18, 2012, Claimant was reported to be getting violent, hitting and kicking family members. *Id.* Claimant threatens to hurt others if she does not get her way. *Id.* Based on the foregoing, the Commissioner found that "medical improvement was not established." R. 543. The CDR Form does not contain any specific functional limitations. R. 542-543. The ALJ did not mention the CDR Form in her opinion. R. 24-36.

Claimant argues that the ALJ should have addressed the CDR Form given the fact that it was completed three and one-half months before Claimant's date of medical improvement. Doc. No. 21 at 22-23. The Commissioner argues that the ALJ applied the proper legal standards as to step one. *Id.* 23-32.

The undersigned agrees with the Commissioner for two reasons. First, the undersigned finds that the ALJ provided the proper legal standards by comparing evidence at CPD to the medical evidence reflecting Claimant's improvement. The Eleventh Circuit "has held that a comparison of the original medical evidence and the new medical evidence is necessary to make a finding of improvement." *McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985) (*Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984)). At step one, the ALJ summarized Claimant's medical evidence at CPD. R. 28. At step three, the ALJ summarized the new medical evidence

showing Claimant's medical improvement.[11] Based on such comparison, the ALJ found that since April 30, 2012, "the objective medical evidence of record shows medical improvement, particularly when [Claimant] is compliant with medications." R. 28. While the undersigned recognizes CDR Form's proximity to Claimant's date of medical improvement, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision" so long as the decision provides sufficient proof that the ALJ considered the claimant's medical condition as a whole. *See Dyer*, 395 F.3d at 1211.

Second, to the extent that Claimant argues that the CDR Form should have been specifically weighed as a medical opinion, the undersigned finds that the CDR Form does not contain any specific functional limitations and thus need not be specifically weighed. "A medical opinion is a statement reflecting judgment about the nature and severity of an impairment and <u>what a claimant can still do despite it</u>." *Valdez v. Comm'r of Soc. Sec.*, No: 3:14-CV-1328-J-PDB, 2016 WL 836688, at * 4 (M.D. Fla. Mar. 4, 2016) (citing 20 C.F.R. § 404.1527(a)(2)) (emphasis added). If a physician's note does not address the nature and severity of an impairment and what a claimant can do despite such an impairment, it is not a medical opinion. *See Id.* at * 5 (finding a doctor's treatment notes are not medical opinions "because they do not contain judgments about the nature and severity of [Claimant's] low back pain…<u>and what he can still do despite it</u>") (emphasis added). Here, the CDR Form contains impressions on Claimant's symptoms and laboratory findings. R. 542. However, it does not address what Claimant can or cannot do despite her impairments. Thus, the undersigned finds that the CDR Form need not be specifically weighed.

---

[11] When summarizing such evidence, the ALJ recognized a medical evaluation from Dr. Afridi, which notes that Claimant was stable, doing very well, and compliant with medication. R. 30. The ALJ also noted Dr. Afridi's statement that Claimant was "doing good", having good grades, and was more stable and less defiant and oppositional. R. 30-31. Dr. Afridi's evaluation was taken on January 31, 2012, thirteen days after the CDR Form was completed. R. 543-43.

## VI. CONCLUSION

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and

2. The Clerk is directed to award judgment to the Commissioner and to close the case.

**DONE and ORDERED** in Orlando, Florida on April 20, 2017.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Barbara Arlene Fink
1167 Buena Vista Dr.
Daytona Beach, FL 32117

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602-4798

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Melinda Hart
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224